# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH JACKSON,<br><br>                Petitioner,<br><br>v.<br><br>JEFF MACOMBER,<br><br>                Respondent. | Case No.: 22-cv-863-LAB-DEB<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS [Dkt. 1]; and**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY** |

## I.  INTRODUCTION

Petitioner Joseph Jackson, a state prisoner currently in custody for life without the possibility of parole ("LWOP"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."), arguing his ineligibility for a youth offender parole hearing under California Penal Code section 3051 violates the Equal Protection Clause of the Fourteenth Amendment. (*See* Dkt. 1, Pet.).[1] The Court has reviewed the Petition, (*id.*), the Answer and Memorandum

---

[1] Page numbers for the Petition, Answer, and Memorandum of Points and Authorities in Support of the Answer cited in this Order refer to those imprinted by the Court's electronic case filing system.

of Points and Authorities in Support of the Answer, (Dkt. 8, 8-1), the lodgments and other documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **DENIES** the Petition and **DENIES** a certificate of appealability.

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Jackson may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). The California Court of Appeal summarized the trial proceedings as follows:

> On the evening of January 30, 1997, defendant shot and killed Charles (Charles) Downing and Linda Lewis. He also shot James Robinson in the chest and Sonja (Sonja) Downing in the right and left thighs. Both Robinson and Sonja survived. All of the victims were inside an apartment that defendant and two accomplices entered at about 10:00 p.m., after learning earlier that evening that Charles was selling cocaine from the apartment. Once inside, defendant asked about the drugs while announcing, "This is a robbery." As noted, defendant was 19 years old when he committed the crimes.
>
> In 1998, a jury convicted defendant of two counts of first degree murder (§ 187, subd. (a); counts 2 & 3); three counts of attempted premeditated murder (§ 187, subd. (a) & former § 664; counts 4, 6 & 8); five counts of attempted first degree robbery (§§ 211, 213, subd. (b) & 664; counts 10-14); one count of residential burglary (§ 459; count 15); three counts of assault with a semiautomatic firearm (former § 245, subd. (b); counts 5, 7 & 9), and one count of conspiracy to commit robbery (former § 182, subd. (a)(1); count 1).
>
> As to both murder counts, the jury found true the

> special circumstances of multiple murder (former § 190.2, subd. (a)(3)); murder during an attempted robbery (*id.*, subd. (a)(17)); and murder during a first degree burglary (*ibid.*). The jury also found true the allegations as to all counts that defendant was armed with a firearm (former § 12022, subd. (a)(1)), and that he personally used a firearm (§ 12022.5, former subd. (a)(1)). As to counts 4 through 7, 10 through 13, and 15, the jury found true the allegation that defendant inflicted great bodily injury on a nonaccomplice (former § 12022.7, subd. (a)). The People sought the death penalty for defendant, but the jury was unable to unanimously agree on the penalty and the People did not seek a retrial on the issue.
>
> As noted, the trial court sentenced defendant to two consecutive terms of LWOP. Defendant also was sentenced to three consecutive terms of life with the possibility of parole, plus a determinate term of 27 years four months. Defendant appealed. After striking a parole revocation fine, this court in January 2001 affirmed the judgment in defendant's direct appeal.

(Dkt. 9-6, Resp't Lodgment No. 6 at 2–3, *People v. Jackson*, 61 Cal. App. 5th 189, 192–93 (2021)).

### III.     PROCEDURAL BACKGROUND

In July 1998, Jackson was convicted of two counts of first degree murder, three counts of attempted premediated murder, five counts of attempted first degree robbery, one count of residential burglary, three counts of assault with a semi-automatic firearm, and one count of conspiracy to commit robbery. (Dkt. 9-1, 9-2, Resp't Lodgment Nos. 1 at 20–22, 2 at 42–62). He was sentenced to two consecutive terms of LWOP, three consecutive terms of life with the possibility of parole, and a determinate term of twenty-seven years and four months in prison. (Dkt. 9-1, 9-2, Resp't Lodgment Nos. 1 at 20–22, 2 at 57–62). Jackson appealed his convictions, but besides striking a parole revocation fine the judgment was affirmed. (Dkt. 9-6, Resp't Lodgment No. 6 at 3–4, *Jackson*, 61 Cal. App. 5th at 193).

On October 28, 2019, Jackson filed a petition in the state trial court asking for a youth offender hearing pursuant to California Penal Code section 3051, arguing that its exclusion of offenders who, like him, were sentenced to life without parole, violated the Equal Protection Clause of the Fourteenth Amendment. (Dkt. 9-1, Resp't Lodgment No. 1 at 34–46). On November 27, 2019, the trial court denied the petition, concluding there is a rational basis for exclusion. (*Id.* at 30–32). Jackson appealed the denial to the California Court of Appeal, which also concluded that section 3051 didn't violate the Equal Protection Clause. (Dkt. 9-6, Resp't Lodgment No. 6, *Jackson*, 61 Cal. App. 5th 189). Jackson then filed a petition for review with the California Supreme Court, which was summarily denied on June 9, 2021. (Dkt. 9-10, Resp't Lodgment No. 10).

Jackson filed his Petition in this Court on June 10, 2022. (Dkt. 1). Respondent filed an Answer and Memorandum of Points and Authorities in Support on November 2, 2022. (Dkt. 8, 8-1).

## IV.    SCOPE OF REVIEW

Jackson's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 326–29 (1997). Under AEDPA, a habeas petition won't be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court may grant habeas relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state

court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal court isn't called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential standard of review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). If the dispositive state court order doesn't "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75–76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court needn't cite Supreme Court

precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court decision won't be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of 28 U.S.C. § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 71–72.

## V. DISCUSSION

Jackson argues that ineligibility for a youth offender parole hearing under California Penal Code section 3051 violates the Equal Protection Clause of the Fourteenth Amendment. (Dkt. 1 at 10–25). Section 3051 established a procedure for some offenders to obtain a youth offender parole hearing. Cal. Penal Code § 3051. Youthful offenders, those eighteen to twenty-five years old, who committed their crimes before the age of twenty-five and received sentences of less than LWOP, are eligible for a youth offender parole hearing under the statute. *Id.* § 3051(b)(1)–(3). California Penal Code section 3051(b)(4) deals with offenders who were sentenced to LWOP. For those offenders, the California legislature determined that only persons who had committed their crimes before the age of eighteen would be eligible for a youth offender parole hearing. *Id.* § 3051(b)(4). That section states:

> (4) A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is life without the possibility of parole shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of incarceration.

*Id.*

The purpose of section 3051 is "to account for neuroscience research that the human brain – especially those portions responsible for judgment and decisionmaking – continues to develop into a person's mid-20s." *People v. Wilkes*, 46 Cal. App. 5th 1159, 1166 (2020) (citing *People v. Edwards*, 34 Cal. App. 5th 183, 198 (2019)).

Jackson, who was nineteen at the time he committed his crimes and was sentenced to LWOP, isn't eligible for a youth offender parole hearing pursuant to California Penal Code section 3051. Jackson argues section 3051 violates the Equal Protection Clause in two ways. First, he contends section 3051's differential treatment of youthful offenders, who are between eighteen and twenty-five years old and sentenced to LWOP, and juveniles, who are under eighteen years old and sentenced to LWOP, violates equal protection principles by treating similarly situated individuals in a disparate manner. (Dkt. 1 at 8–25). Second, he contends section 3051 also violates equal protection principles by treating youthful offenders who commit first degree murder and aren't sentenced to LWOP differently than youthful offenders who commit first degree murder and are sentenced to LWOP. (*Id.*). He asks this Court to invalidate portions of the law on equal protection grounds and find he is eligible for a youth offender parole hearing under its provisions. (*Id.*).

A.   **Jackson's Claim Isn't Cognizable**

In *Nettles v. Grounds*, the Ninth Circuit held that the sole method for prisoners to challenge the fact of their conviction or the duration of their confinement was through a writ of habeas corpus. 830 F.3d 922, 929 (9th Cir. 2016). Other claims, if they are to be brought at all, must be brought via a civil rights complaint pursuant to 42 U.S.C. § 1983. *Id.* at 934–35. District Courts in California have concluded that an equal protection challenge to section 3051 isn't within the core of habeas corpus because a favorable resolution of the claim wouldn't necessarily result in a speedier release from prison but rather only a

youth offender parole hearing, following which a petitioner may or may not be granted parole. *See, e.g.*, *Saesee v. Lynch*, No. 22-cv-1512 AC P, 2023 WL 3380100, at *2 (E.D. Cal. Apr. 25, 2023) (finding that "[b]ecause petitioner seeks only to be granted a youth offender parole hearing, at which he may or may not be granted parole, success on the merits of the petition will not guarantee his speedier release and this court lacks [habeas] jurisdiction"), *R. & R. adopted* 2023 WL 3996652 (June 12, 2023); *Xicotencatl v. Gastelo*, No. 20-cv-09612-SB (SK), 2022 WL 18276329, at *10 (C.D. Cal. Nov. 30, 2022) (stating that "Petitioner's equal protection challenge [to section 3051(h)] thus lies outside the 'core of habeas corpus' because a favorable decision 'would not necessarily lead to his immediate or earlier release from confinement'") (citing *Nettles*, 830 F.3d at 934–35), *R. & R. adopted* 2023 WL 172008 (Jan. 11, 2023); *Turner v. Foss*, No. 19-cv-1878-GPC-RBM, 2020 WL 3971599, at *3 (S.D. Cal. July 14, 2020) (same).

  Other courts in California have concluded that equal protection challenges to section 3051 do lie within the core of habeas when they are coupled with a request to be resentenced under section 1170(d)(2), which permits a defendant who was under the age of eighteen at the time of the commission of the offense and was sentenced to LWOP to petition the sentencing court for recall and resentencing after serving fifteen years of the sentence. Cal. Penal Code § 1170(d)(2); *see Adams v. Frauenheim*, No. 17-cv-01289-EMC, 2018 WL 3046939, at *3 (N.D. Cal. June 14, 2018) (finding the challenge could be brought in a habeas corpus petition because petitioner alleged he was entitled to consideration under the resentencing and parole provisions of California Penal Code sections 1170(d) and 3051); *Thomas v. Arnold*, No. 16-cv-02986-WQH-NLS, 2018 WL 279975, at *3 (S.D. Cal. Jan. 3, 2018) (finding that *Nettles* didn't bar a habeas action in which petitioner seeking relief under section 3051 "request[ed] re-sentencing, and in the alternative, access to a parole hearing").

While Jackson does mention section 1170(d)(2), (*see* Dkt. 1 at 19–20), he doesn't explicitly ask to be resentenced under its provisions. Regardless, he isn't eligible to be resentenced under that provision because he wasn't under eighteen years of age at the time he committed the offenses. *Cf.* Cal. Penal Code § 1170(d)(2)(A)(i) (stating that "a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole . . . may . . . petition for recall and resentencing" after serving fifteen years). The Court concludes that Jackson's equal protection claim isn't within "the core of habeas corpus," and must be brought, if at all, via a civil rights complaint pursuant to 42 U.S.C. § 1983. *Nettles*, 830 F.3d at 934–35.

**B.   Jackson's Equal Protection Rights Haven't Been Violated**

Even assuming Jackson could bring his equal protection claim by writ of habeas corpus, he hasn't established a violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Tigner v. Texas*, 310 U.S. 141, 147 (1940)). But it doesn't "forbid classifications." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Id.* (citing *City of Cleburne*, 473 U.S. at 439–41; *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).

California Penal Code section 3051 doesn't classify by a protected class such as race, alienage, or national origin, and "neither prisoners nor persons convicted of crimes constitute a suspect class for equal protection purposes."

*United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011). Nor is there a fundamental right to parole consideration. *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). Thus, as the state court correctly concluded, the statute must be reviewed under the "rational basis" test to determine whether the distinctions it makes are "rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440; *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir. 2005) ("Government actions that do not . . . involve suspect classifications will be upheld if [they] are rationally related to a legitimate state interest.").

### 1.  Youthful Offenders and Juveniles Sentenced to LWOP

California Penal Code section 3051 provides youth offender parole hearings for juveniles—those under eighteen years of age—convicted of murder and sentenced to LWOP, but doesn't provide such hearings for youthful offenders—those eighteen to twenty-five years old—convicted of murder and sentenced to LWOP. Jackson argues in his petition for review to the California Supreme Court that this distinction violates equal protection. (Dkt. 1 at 8–25). The California Supreme Court summarily denied Jackson's petition. (Dkt. 9-10, Resp't Lodgment No. 10). Because there is no reasoned opinion from the state supreme court, this Court must look through to the last reasoned state court decision to address the claim. *See Ylst*, 501 U.S. at 805–06.

Here, that's the opinion of the California Court of Appeal. In denying Jackson's claim, that court stated:

> We conclude defendant's equal protection challenge to this classification lacks merit because both the United States Supreme Court and our high court have repeatedly found the bright-line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing. (*Miller v. Alabama* (2012) 567 U.S. 460, 471, 132 S.Ct. 2455, 183 L.Ed.2d 407 (*Miller*) ["children are constitutionally different from adults for purposes of sentencing"]; *Roper v. Simmons* (2005) 543 U.S. 551, 574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (*Roper*) ["The age of 18 is

the point where society draws the line for many purposes between childhood and adulthood"]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1380, 171 Cal.Rptr.3d 421, 324 P.3d 245 [the age of 18 "is the line the [United States Supreme Court] has drawn in its Eighth Amendment jurisprudence"]; *People v. Gamache* (2010) 48 Cal.4th 347, 405, 106 Cal.Rptr.3d 771, 227 P.3d 342 ["We previously have rejected the argument that a death penalty scheme that treats differently those who are 18 years of age and older, and those younger than 18, violates equal protection"].)

(Dkt. 9-6, Resp't Lodgment No. 6 at 8, *Jackson*, 61 Cal. App. 5th at 196–97).

"The Constitution 'does not mandate adoption of any one penological theory' . . . [and] [s]electing the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts." *Ewing v. California*, 538 U.S. 11, 25 (2003) (internal citation omitted). "A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation." *Id.* (internal citation omitted). California has decided to deny youth offender parole hearings to individuals who committed crimes serious enough to receive a sentence of LWOP after reaching the age of eighteen while granting such hearings to those who were under the age of eighteen when they committed their crimes. That decision is rationally related to the state's goal of releasing on parole those individuals who are most likely to succeed, not reoffend, and successfully rehabilitate. See *Glass v. Kernan*, No. 18-cv-00641-PA (MAA), 2019 WL 2062541, at *5 (C.D. Cal. Apr. 5, 2019) ("Section 3051—is rationally related to California's legitimate interest in public safety, and therefore satisfies the rational basis test."). Ratifying this conclusion, the Supreme Court has recognized the distinction between juveniles and nonjuveniles to be a rational one in criminal sentencing. *Miller v. Alabama*, 567 U.S. 460, 471 (2012) ("children are constitutionally different from adults for purposes of sentencing"); *Roper v. Simmons*, 543 U.S. 551, 574 (2005) ("The age of 18 is the point where society draws the line for many purposes

between childhood and adulthood."). The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694; *Andrade*, 538 U.S. at 71–72.

### 2. Youthful Offenders Convicted of First Degree Murder

Jackson also argues California Penal Code section 3051 violates equal protection by improperly differentiating between youthful offenders convicted of murder and sentenced to less than LWOP, who have the opportunity for a youth offender parole hearing, and youthful offenders convicted of murder and sentenced to LWOP, who don't. (Dkt. 1 at 8–25); Cal. Penal Code § 3051(b)(1)–(3). The California Supreme Court summarily denied Jackson's petition. (Dkt. 9-10, Resp't Lodgment No. 10). Again, the Court looks to the opinion of the California Court of Appeal:

> [T]hose sentenced to LWOP have also been found, beyond a reasonable doubt, to have committed that first degree murder under one—or as in this case, more than one—of the special circumstances that reflect that the particular first degree murder was in some manner aggravated or reflected a greater risk of harm to persons other than the immediate murder victim or victims. (*See* § 190.2, subd. (a)(1)–(22); *People v. Horning* (2004) 34 Cal.4th 871, 907, 22 Cal.Rptr.3d 305, 102 P.3d 228.) As a result, youthful offenders who have been sentenced to LWOP have committed an aggravated form of first degree murder that distinguishes them from youthful offenders who have committed first degree murder but done so in the absence of any such aggravating factors.
>
> Consequently, we independently conclude the two groups of first degree murderers are not similarly situated. (*In re Williams* (2020) 57 Cal.App.5th 427, 435–436, 271 Cal.Rptr.3d 453 (*Williams*) [rejecting the argument that "youth offenders sentenced to LWOP and those youth offenders sentenced to parole-eligible life terms are similarly situated with respect to the Legislature's first goal, which is to calibrate sentences in accordance with youthful offenders' diminished culpability," and noting that "[w]hile a

21-year-old special circumstance murderer may, in fact, have diminished culpability compared with a 28 year old who commits the same crime, he [or she] is nonetheless more culpable and has committed a more serious crime than a 21 year old convicted of a nonspecial circumstance murder" for purposes of equal protection]; *see also In re Jones* (2019) 42 Cal.App.5th 477, 481, 255 Cal.Rptr.3d 571 [in which the majority concluded that "[b]ecause LWOP offenders who were between the ages of 18 and 25 when they committed their offenses are adult offenders, they are not similarly situated to juvenile offenders described in section 1170(d)(2)"]; *People v. Jacobs* (1984) 157 Cal.App.3d 797, 803, 204 Cal.Rptr. 234 [recognizing that "'[p]ersons convicted of different crimes are not similarly situated for equal protection purposes'" (italics omitted)].)

And, assuming arguendo we accept defendant's contention that all murderers are similarly situated vis-à-vis section 3051's desire to allow all youthful offenders the opportunity to show that they have reformed, in our view the difference in the underlying crimes, and the fact that special circumstance murder is punished more harshly, provide a rational reason for distinguishing between the two groups of first degree murderers. (*Williams*, *supra*, 57 Cal.App.5th 427, 435–436, 271 Cal.Rptr.3d 453; accord, *Contreras*, *supra*, 4 Cal.5th at p. 382, 229 Cal.Rptr.3d 249, 411 P.3d 445 [noting that "special circumstance murder" is sentenced most "harshly"]; *People v. Blackwell* (2016) 3 Cal.App.5th 166, 202, 207 Cal.Rptr.3d 444 [noting that "[f]irst degree special circumstance murder, viewed in the abstract, is perhaps the most serious offense under California law...."]; *People v. Acosta* (2021) 60 Cal.App.5th 769, 780, 275 Cal.Rptr.3d 110 [noting the severity of the crime committed provides a "rational basis for distinguishing between a young adult LWOP offender and a young adult offender serving a non-LWOP sentence"].)

"'It is the prerogative, indeed the duty, of the Legislature to recognize degrees of culpability when drafting a Penal Code.' [Citation.] ... 'The decision of how long a particular term of punishment should be is left properly to the Legislature. The Legislature is responsible

for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed.' [Citation.]" (*Wilkinson*, *supra*, 33 Cal.4th at p. 840, 16 Cal.Rptr.3d 420, 94 P.3d 551; see *In re Lynch* (1972) 8 Cal.3d 410, 414, 105 Cal.Rptr. 217, 503 P.2d 921 [noting it is the "function of the legislative branch to define crimes and prescribe punishments, and ... such questions are in the first instance for the judgment of the Legislature alone"].)

Given the deferential standard we apply in determining rationality for equal protection purposes, we conclude public safety, and the desire to punish those persons who commit first degree special circumstance murder more harshly than persons who commit first degree murder without aggravating circumstances, provide a plausible basis for our Legislature to treat these two classifications differently for purposes of section 3051. (*See Heller*, *supra*, 509 U.S. at p. 319, 113 S.Ct. 2637 [noting that "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices'"]; *see also Turnage*, *supra*, 55 Cal.4th at p. 74, 144 Cal.Rptr.3d 489, 281 P.3d 464.)

(Dkt. 9-6, Resp't Lodgment No. 6 at 11–13, *Jackson*, 61 Cal. App. 5th at 199–200).

Jackson isn't similarly situated to other youthful offenders who have been convicted of first degree murder and sentenced to less than LWOP. Besides convicting him of two counts of first degree murder, the jury also found to be true three special circumstances: (1) that he committed multiple murders; (2) the murders were committed during a robbery; and (3) the murders were committed during a first degree burglary. (Dkt. 9-1, 9-2, Resp't Lodgment Nos. 1 at 20–22, 2 at 42–62). Jackson's crimes were more serious than those committed by youthful offenders without special circumstances. His crimes legitimately warrant a harsher penalty. California's decision to deny youth offender parole hearings to individuals like Jackson who have been convicted of first degree murder with

aggravating circumstances is rationally related to its legitimate goals of protecting its citizens from those offenders who have committed the most severe crimes, and to punishing such offenders more severely. *See Adams*, 2018 WL 3046939, at *6. It's also rationally related to the legitimate interest of affording possible parole only to offenders who are more likely to succeed on parole, which the state has determined are those who didn't commit aggravated murders. *Id.* ("The California Legislature has chosen to except from the benefits of [section 3051] those offenders whose LWOP sentences by their nature reflect the commission of particularly severe crimes [and] has determined that those young adult offenders who committed less severe crimes are more deserving of potential sentence relief, apparently believing that their less severe crimes suggest they are less likely to be incorrigible and more likely to return to society successfully.").

Jackson's reliance on *In re Williams*, 57 Cal. App. 5th 427, 434–35 (2020), is misguided. The *Williams* court found offenders sentenced to LWOP and those not sentenced to LWOP aren't similarly situated for the Legislature's first goal of calibrating sentence in accordance with diminished culpability. *In re Williams*, 57 Cal. App. 5th at 435. *Williams* didn't hold persons convicted of different crimes, such as special circumstance murder, are similarly situated to those that committed a less serious crime, such as nonspecial circumstance murder. *Id.* at 435–36. *Williams* doesn't help Jackson. *Id.* at 436 ("The Legislature rationally judged this crime to be more severe and more deserving of lifetime punishment than nonspecial circumstance first-degree murder. This judgment is 'both the prerogative and the duty of the Legislature' and '[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic' of that judgment." (internal citation omitted)).

Jackson's reliance on *People v. Hofsheier*, 37 Cal. 4th 1185 (2006), is likewise unavailing. (Dkt. 1 at 13). In *Hofsheier*, the court determined persons convicted of oral copulation with minors and persons convicted of sexual

intercourse with minors "are sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify unequal treatment." 37 Cal. 4th at 1200. But here, California courts have previously explained why youthful offenders sentenced to LWOP are different from youthful offenders who are not subject to LWOP sentences.

Finally, Jackson claims his case is similar to the murder case against Charles Manson, differing only because the prosecutor didn't charge Manson with special circumstance murder. (Dkt. 1 at 15, 17). The argument misstates the history of Manson's case. Manson was eligible for parole only because his original death sentence was changed to life in prison after California temporarily abolished the death penalty in 1972. *See People v. Manson*, 61 Cal. App. 3d 102, 217 (1976) (citing *People v. Anderson*, 6 Cal. 3d 628, 657 (1972), *superseded by constitutional amendment*, Cal Const. art. I, § 27). Manson was subject to a special circumstances prosecution similar to Jackson.

The state court's denial of Jackson's equal protection claims wasn't contrary to, or an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694; *Andrade*, 538 U.S. at 71–72. Jackson's Petition is **DENIED**.

## VI.   CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny a certificate of appealability. *See* 28 U.S.C. § 2254, Rule 11(a). The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, given the lack of clearly established law, the Court finds Jackson has failed to make "a substantial showing of the denial of a constitutional right," and reasonable jurists wouldn't find

debatable this Court's assessment of his claims. *See id.* Accordingly, a certificate of appealability is **DENIED**.

## VII. CONCLUSION

Based on the foregoing, the Court **DENIES** the petition for writ of habeas corpus, and **DENIES** a certificate of appealability.

**IT IS SO ORDERED**.

Dated: July 25, 2023

*Larry A. Burns*
Honorable Larry Alan Burns
United States District Judge